This was a case of great extent, and involved in it many matters of fact, and questions springing out of them, which required the interposition and direction of *203 the court. There was however, but one point decided by the court of sufficient importance to report. It was on the construction of Mr. Neilson’s will, as to a pecuniary legacy, bequeathed to Mrs. Mayrant.
SEPTEMBER. 1791.
unless a. an-ectPPe the ^p^e^ene-ral residuary “pf eis queathed) on thefparticular fund
The bill charged that Mathew Neilson made his will on the 12th January, 1771, and devised to his mother Mrs. Ellen Neilson, during her life, the use of his plantation, negroes and stock; and after payment of plantation expenses, and house expenses, the proceeds to be applied towards the payment of the legacies mentioned in his will. He bequeathed several pecuniary legacies to different persons: And to his niece Isabella the complainant, a legacy of 5000k currency, and directed that she should be maintained and educated out of part of the interest of it: And he gave asimilar legacy to his niece Mrs. Davis. He devised his plantation on which he lived and the lands adjoining to his brother Jared Neilson, with several limitations over; and bequeathed the residue of his personal estate to his said brother Jared: And he directed that his other lands (named and described) should be sold at the discretion of his executors, and the money arising therefrom, “ to be applied towards the payment of the legacies” given in his said will. Jared Neilson alone proved the will, qualified as executor, and took possession of the estate on the death of the testator. The testator’s estate was a large and clear one, that of Jared the executor and residuary legatee, much embarrassed. After the death of Mrs. Ellen Neilson, the mother of testator, which happened about the year 1776, Jared got possession of all his brother’s estate. He never paid the legacies to complainant or her sister, nor the interest on them— but he did pay the expenses of the two legatees, nieces of testator, duiúng a very short time that they were in Charleston for education; but he had possession of their grand-motlier’s estate also, Which was bequeathed to them, and which might have furnished sufficient funds for that purpose — That Jared sold the lands which were directed to be sold, and the money to be applied towards the payment of the legacies; but they were alleged to be insufficient, and never were applied at all to that purpose. *204 Nor were any part of the profits of the crops so applied, so that the legacies remain wholly unpaid: And from the accumulation of debts and interest, and the losses of crops, negroes, &c. it is said to be doubtful whether Jared ■^e^son’s es^ate will pay his debts, though Mathew Neil-son’s estate is perfectly solvent, if it can be discriminated. Mrs. Mayrant, the niece and legatee of Mathew Neilson, filed this bill together with her husband, for the recovery of the legacy.
The executor in his answer admitted all the facts charged by the bill; and stated that it was believed the surplus profits of the crops during the life estate of Mrs. Ellen Neilson, the mother of the testator Mathew, (to whom the income of the estate was bequeathed during life, charged with the legacies,) had not been sufficient to pay any part of the legacies; and that the lands directed to be sold .for that purpose, (one of the tracts having been recovered by a better title,) were also insufficient: And that Jared Neilson, the executor and principal residuary, devisee and legatee of Mathew Neilson, who it is believed, but not known positively, sold those lands, had applied no part of the proceeds of the sale to the payment of the legacies; and his estate was likely to be insolvent, and complainant might suffer, unless she could make Mathew Neilson’s property liable — That Mathew Neilson’s estate was large, and clear; but that it had been so blended by the executor Jared Neilson with his own for a considerable time, that it was impossible to distinguish them — • That several specific bequests of negroes had been delivered to legatees under Mathew Neilson’s will; and the executor submitted, that the legacy to the complainant Mrs. Mayrant, was so particularly charged and located on the profits of the estate, and the lands directed to be sold, that she was not entitled to have the legacy raised from any other part of the estate generally; however insufficient the particular funds on. which it was charged, or however misapplied by the executor.
The cause came to a hearing, and was argued by Messrs. Desaussure, Ford and Pringle for complainants, and by Mr. E. Rutledge for defendant.
*205 The complainants’ counsel contended, that the testator's providing a particular fund, out of which the legacies were to be paid, is no ground to defeat the legacy on the failure of that fund. 1 P. Wms. 777, 8, 9, Savil vs. Blacket, where lord chancellor Macclesfield decided that a legacy devised to be paid out of a particular fund, should not, on failure of that fund, be lost, but be paid out of some other part of the estate — the lord chancellor said it was possible for a legacy to be charged in such a manner upon a certain fund, as that upon its failing the legacy shall be lost. But this depends upon the circumstances, and the apparent intention, taken in connexion with other provisions of the will. It weighed with the chancellor that this was a considerable estate; and that if a legacy be given to one, to be paid out of a particular debt, and there should not appear to be such a debt, or the fund fail, the legacy ought to be paid; for the failing of the modus appointed for payment should not defeat the legacy. So 2 P. Wms. 164, Crocket vs. Crocket. Ambler 401, 566. 2 Eq. Cas. abr. 553, 5, 568, 9. In Ellison vs. Airey, 2 Vesey 569, it is said by the chancellor, that in such cases the testator only means that a particular fund should be first applied. See too 2 Atk. 625, Walker vs. Jackson. 1 Bro. C. C. 145, Samwell vs. Wake.—That the testator, in the case under discussion, did not expect that the annual profits of his estate, (after paying the plantation expenses, and his mother’s household expenses,) would pay the legacies; for he superadds a direction to sell certain lands, for the purpose of paying the legacies; and he did not consider it certain that even that would be sufficient; for he says, the proceeds of the sales shoidd be applied tl towards paying the legacies.” This expression indicates his meaning to be, that he looked to these funds merely as the primary, and not as the sole fund. If he had intended to restrict the amount of the legacies to these funds, he would have said the surplus income of his estate, and the amount sales of the lands ordered to be sold, should go in satisfaction of the legatees: But he fixes a precise sum, 50001. apiece, and points out the ¡sources first to be resorted to ee towards tlie payment.” *206 The testator’s intention is manifested by considering the state of his family. He had a mother, a brother, and a sister’s children, but neither wife nor child of his own. ge prov]¿es for his mother for life, gives legacies to his nieces, and a large estate to his brother Jared. He meant to make at least a certain provision for his nieces; and put himself in the place of a parent so far as even to direct their education. It is not therefore at all probable that he meant the amount of their legacies to be uncertain and contingent, dependant on crops, and on the sale of lands of doubtful value. — Then, as to the situation of the estate: Mathew Neils on’s estate was large, and clear. Jared Neilson, the executor and residuary devisee and legatee, took possession of the whole. His mingling the estate with his own, and his representatives disposing of part of it, and pledging part of it for his debts, cannot prejudice the legatees. His conduct and that of his representatives was a breach of trust as to the legatees, and the court will follow the property. 1 Atk. 418. 2 Eq. Cas. abr. 421. Jared Neilson was not entitled to apply any part of the estate to liis own use, till he paid the legacies; he was residuary legatee and devisee: And even if the legacies had been confined, to be paid out of the profits of the estate, there being no limited time, he> should have kept the estate together as the estate of Mathew Neilson till the legatees were paid. The court must be satisfied that the surplus income (above the charges imposed on it) was sufficient to pay the legacies, before they will restrict the legacies to that fund, or suppose that the testator meant to do so.
On the part of the defendant it was insisted, that an executor has a right to sell the personal estate of testator, as well as the heir has a right to sell the real estate: And if they sell, the purchaser for valuable consideration is secure, the property is absolutely vested in him, but the executor and heir are liable to account. See 1 Vesey 483. 1 Bac. 26. 2 Bla. Rep. 801. 2 Atk. 63, 468. 2 Vesey 268. It was also insisted, that the legacy was restricted to the particular funds designated by the testator; and that the general estate was not liable; and that at all *207 events, the legatees could not come on the general estate till it was ascertained that the particular funds were exhausted: More especially as the blending the estates of Mathew and Jared had made it difficult to follow that of Mathew; and the executor of Jared, from ignorance, had sold some and mortgaged others of the negroes for Jared’s debts.
Decree,
The only point the court said it was at present necessary to decide is, whether the bequest under the will of Mathew Neilson to Eleanor and Isabella Norwell (the nieces of testator) is strictly confined to the specific funds of the profits arising from his estate, and the lands directed to be sold towards the payment of his legacies, or whether, in case of a failure of those, it becomes a charge upon the general residuary estate. It is evident he meant to give his niece the complainant, now before the court, a beneficial interest out of his estate, and not merely a nominal one: But admit for a moment that the legacies attach themselves to the profits of the estate, then by the will Jared Neilson could not take the estate absolutely till the profits had been sufficient to pay the legacies — (see the will.) It being therefore evident he did not intend that J. Neilson should take till he had satisfied all the legacies, it is immaterial then whether one of the specific funds failed, viz. the lands; for in that case recourse ought to have been had to the labour of the negroes, until the legacies were raised: But as J. Neilson has thought proper to divert that fund to his own use, or his executors since his death have done so, we must consequently have recourse to that part of Mathew Neilson’s estate, from which it was intended the legacies should have been raised, viz; the negroes; and out of the sale of which we are of opinion the legacies to the complainants must now be l’aised; unless on a reference to the master it shall be found that the estate has been sufficiently productive for that purpose. It must therefore be referred to the master to state the accounts between all the parties in this suit, and report accordingly.